May it please the court. My name is Elizabeth Johnson. I represent the appellant Raymond Leonard in his appeal to this court. Mr. Leonard was pled guilty in the district court to re-entering the United States after having been deported. His plea agreement permitted him to raise to this court his motion to dismiss which was made before Judge Koontz. Judge Koontz denied that motion to dismiss which was incorrect. In the immigration proceedings which resulted in the deportation order that underlay the prosecution, Mr. Leonard received ineffective assistance of counsel. That ineffective assistance rendered his deportation order fundamentally unfair and it also excused him under this court's precedent in CERNA from exhausting his administrative remedies and it deprived him of the opportunity of judicial review which are the requirements under the statute for him to make a collateral attack on the deportation order in his criminal prosecution. Okay, so what do we do about the fact that the government argues the INS could have alleged additional convictions that would have qualified Mr. Leonard for deportation under the same statute? Well, first of all, they didn't bother to argue that in the district court, so I would say it's waived. Second of all... Okay, let's for the moment put aside the question of forfeiture, not waiver. Correct. Thank you, Your Honor. But the argument is being made that even if counsel met the first part of a claim of ineffectiveness that he should have made the argument that no harm followed because had that argument been made, the government would have come in and said there are other things clearly on the record. Okay? Yes, Your Honor. Thank you. Now, forfeiture. Why should the government be treated as forfeiting something it didn't need to argue because it had won already? See, I always worry about forfeiture in not making an argument which at the time is not needed by that party because they had won incorrectly. Okay, but they had won. Well, but, Your Honor, I think that the argument was necessary if only in the alternative. The government submitted one brief in the district court, and at that time they hadn't won anything. The defendant had clearly argued that one of the things was that because of the way his counsel had proceeded, he was prejudiced and that he was deported when he shouldn't have been. So that argument was clearly on the table. The government did not respond to it. Well, actually, let me restate that. Their argument on prejudice was that he wasn't prejudiced because a subsequent law meant that one conviction was enough, which was clearly wrong, and they don't raise it in this court. So they had every opportunity, which is what the law requires, to raise the argument in the district court, and they had every reason to raise it because prejudice had been teed up for them by the defendant already. So I would say that, yes, the argument was forfeited. But to the merits, first of all, they don't cite any cases that do this. There is a case in the Ninth Circuit that explicitly does talk about this, which is where there's ineffective assistance of counsel, and there are argues about prejudice, and what the Ninth Circuit says is you can only look at the crimes that were actually alleged in the petition. And the only ones that were alleged in the petition here are the two that we're talking about. And the one that's not a crime involving moral turpitude is the attempted assault in the second degree. There's a separate criminal possession of stolen property. So I'd say that the law, to the extent it's out there, says no. I would also say it's unfair. Basically, what they're asking this court to do is to say, we know what the INS would have done at the time. We also know how it would have been litigated. We know what the immigration judge would have done. It's an entirely hypothetical proceeding, and if all we do- But we do, like it or not, Strickland does have a prejudice problem. Correct. All right, so what about the normal interpretations that courts use when assessing prejudice, which is generally, would it have come out the same way? Are we not able to use under your version of what you think is fair or not fair? Like, what are we allowed to assess based on prejudice? What are the elements that we would be able to examine? I would say that what most courts have said, and this court has said in Scott, although it was considering a different issue, it was considering ex post convictions, is the question is, was this deportation order fundamentally unfair? And it was this deportation order based on these proceedings- But is that what we look to to prejudice, or do we look to whether it would have made any difference? If what we look to is what you say, your argument is very strong. If we look to whether it would have made any difference, assume that counsel had properly raised the first question, there weren't two crimes involving moral turpitude. Would that have made any difference? And the question then is, would the government at that point have also forfeited, or would the government at that point have said, oh no, it makes no difference when you raise it because he had other crimes? You see what I'm saying? That is, in terms of prejudice, which is it we look at? I think I understand that the question is whether we look at prejudice in the immigration court or in the district court. Is that correct? No, the question is, what is the gap between how we understand prejudice? You would define prejudice as, is it fair? I think that's what you said. We, at least right now, understand prejudice to be, would it have changed the outcome? So help me fill in the gaps. Sure. The statute at issue, which is 18 U.S.C. 1326, sub D, sets forth the requirements here. And the one that we're looking at is sub 3, which is whether the defendant can establish that the entry of the order was fundamentally unfair. This order was fundamentally unfair because it completely lacked any legal basis whatsoever, because it's supposed to be two crimes of moral turpitude, and it's one. Okay. How does that affect Strickland, the ineffective assistance of counsel claim, which has two prongs, one being deficient performance, and you have, I think, asked us to basically find failing to raise a meritorious argument constitutes deficient performance. We'll get to that part in a minute. The second part is how do we establish prejudice under your analysis about it being inappropriate for us to think what the government would have reasonably done? And I thought you told me that the way we understood prejudice should be understood as fairness. Sorry. I'm inviting you to clarify how you think we would ever or how anybody would ever, how we understand the prejudice problem. Sure. What I'm saying is that when you are evaluating prejudice, you're limited to looking at what the INS actually alleged in this case, what the actual proceeding was. The proceeding wasn't, is Mr. Leonard generally the kind of person we want to deport? It wasn't, in the universe of people, is he deportable? It was, we're alleging these two crimes. These crimes make you deportable. That was wrong. The counsel didn't argue it correctly. The result was a deportation order that should not have issued. And there you are saying the fact that nowhere until we get to this court does the government argue that this fact of other crimes involving moral turpitude mean that as of that time it was prejudicial. That is, your unfairness notion is the government did not make the argument that this was not prejudicial. That is part of it. Yes, Your Honor, but I think it's also just a simple argument that the claim wasn't preserved in the district court or anywhere else. I mean, I will tell you, if I raised something for the first time in this court that I hadn't raised in the district court, you wouldn't consider it. And that is what is happening here. The government can waive arguments just like anybody else, and they had every opportunity in the district court to make that claim, and they did not. Okay, so may I go back to the first strickling point and ask, are you asking us to create a per se rule that failing to raise a potentially meritorious argument is deficient performance? And if not, what is the rule you would have us articulate that you think would not go too far but would protect your client? I would refer back to this court's decision in Cachetto, which is relatively recent. I think I have the name of the case right. And what happens there is that there is a clear error by the attorney, but there's a subsequent change. Something happens afterwards so that, in fact, the client would have been deported anyway. But it is not this introducing other facts that were not present before the INS, or before the immigration judge. I apologize. And so it is not per se a problem because let's say that, but I would say that in this case where there was no other basis, okay, let me rephrase. In Cachetto, what happens is the law is unsettled. They could have argued one way. It wasn't clear whether what the case, the crime in question was a crime of moral turpitude. But there was a pretty good argument that it wasn't. And if it had been raised at the time, it would have preserved the issue. The client could have gone forward and considered it on appeal. He had a strong chance of fighting deportation. It was the only argument against deportation, and counsel didn't raise it. That's ineffective. You had a strong legal argument. You failed to raise it. However, subsequently the law changes. So is that the rule? I mean, remember, we're going to need to write a rule of general applicability. Is your suggestion that we write a rule that says that deficient performance is established if a meritorious legal argument is not raised? I would say that what the court did in Cachetto is correct, is a correct rule, which is that you said that it was ineffective in that the lawyer did not bother to raise what would have been a strong argument but found no prejudice because the law had, by the time it got around to appeal, the law had changed. The law had been clarified. Sorry. So it would say that if somebody would not, it is deficient performance if they have not raised a strong argument. That is deficient performance per your understanding? That is deficient performance, but the question of prejudice, if the law has changed, which is what happened in Cachetto but didn't happen here. Is what you're saying is that the failure to raise an argument that would have in fact made a difference is, because at that level, that's all we look for, is the first part of the strict and like. It's not technically strict, but the same thing in an immigration context is enough. Correct. Then we ask whether in the particular case it would have made a difference. Yes, but I think that part of what I'm talking about here is that there is a question about whether, Cachetto is talking about unsettled law. You have a pretty good argument, but we don't know one way or the other, and if it turns out that, well, actually you would have been wrong, right, then there's no prejudice. You're saying that in this case we don't need to worry about the situation of unsettled law, because here the council failed to make an argument which under settled law would have made a difference. Exactly. What was the law at the time still is the law today, was the law in 1933. Okay, thank you. Mr. Grubin, do you have any questions? No, thank you very much. Thank you. Thank you, Your Honor. Thank you. Mr. Grubin. Good morning, Your Honors, and may it please the Court. My name is Andrew Grubin, and I represent the United States. The defendant did not meet his burden of demonstrating that immigration counsel was ineffective under really any standard, let alone so ineffective to have excused the defendant's requirement to exhaust his administrative remedies under Section 1326D1. And remember, this is something less than Strickland. And as the Supreme Court made plain in Palomar-Santiago, a defendant collaterally attacking his indictment must meet all three 1326D requirements and is not excused even when there is an alleged defect. And to the extent post-Palomar-Santiago, the exception to the exhaustion requirement for ineffective assistance in the CERNA line of cases still applies with equal force, this Court has made very clear in its CERNA cases, in CERNA and its progeny, it's a limited one. And extending it, as Your Honor suggested here, to an attorney who actually, it wasn't that he didn't raise an issue, he spotted the issue. He briefed the issue. For reasons we just simply don't know, looking back at the record from the papers from the 1990s, it was abandoned, perhaps in consultation with his client, but successfully litigated various other issues across nine years would be a dramatic departure from what this Court has said is ineffective assistance under a Fifth Amendment standard. And we could look at that. If we look at, for example, look at CERNA itself, the initial case that first applied this, I believe, and in that case you had an immigration judge who told the immigration counsel and the client that you could apply for Section 212C relief, you're eligible for it. And the counsel said he would do so. And then the client, the defendant in that case, or the petitioner there, was in detention, thought his attorney was working on it. The attorney never did. I believe 45 days passed, and he was removed. And the counsel didn't do anything else. And this Court said that such performance is so below the basic standards of what is expected from an attorney that he's excused. Can you tell me why that's so different in this case? I mean, in some ways we have the relief being similarly uncertain. It would also similarly be dispositive of a deportation order. Why? I found it interesting that you suggest that this is like a high-water mark and this is so different. They actually sound in the same range. So why are you jumping behind one case, and how would you distinguish it from this one? Sure. I think CERNA is very different in a few ways, and so is also the other cases like at Scott. But look, if we assume that this guy was guilty only of one crime involving moral turpitude, that the government incorrectly charged him with two, that counsel should have known or actually knew that he was guilty of only one crime and did not raise it, why wouldn't that be manifestly a failure of counsel? That seems to me even more obvious than CERNA. The question then is— I'm sorry. Give me one second. We seem to have lost— Yes, he's still on. Oh, he's still on? Okay. I'm so sorry. Go ahead. Why isn't that part obvious if he was in fact guilty only of one crime? Now, the fact that he may have been guilty of another, of others, and therefore that it wouldn't make any difference is crucial to this case. And the question is then, do we care that the government didn't raise it, or do we say, because that in a way makes it unfair, or do we say, but you know, it actually wouldn't have made any difference because he was guilty of more than one? I don't see why you're arguing the first part where if he was really guilty only— I mean, it would be like saying somebody was innocent and there was proof of innocence and his counsel didn't do it, and you're saying, oh, well, it doesn't matter. That's bizarre. So I'm happy to—I want to make sure I answer both your honors' questions. So why don't you do Judge Calabresi's first? Sure. On the question, we are arguing the prejudice point as well. And on the—that in order to find both for ineffective assistance and also just fundamental unfairness, the defendant— and remember, it's the defendant's burden. The defendant has to demonstrate prejudice, meaning that— and this court absolutely looks at the other CIMTs and considers other—for the reasonable probability calculus. It does consider those other things. Do we look at them when the government hasn't raised them? This is going to the waiver argument here. Forfeiture, please. Forfeiture. Yes, Your Honor. Yes, we are the appellees in this case. The cases that the defendant cited—and I don't have it in front of me, but the case the defendant cited—I want to say it's Griffith or Griffin— was where the appellant failed to raise certain arguments, and they did so at the first time at oral argument, I believe, or at least on appeal. This isn't that. The district—this court could find, for any reason clear from the record, it could infirm the district court's decision, and it's not our job or responsibility to raise every single argument that could be made at the district court level. So you're saying that when we look at prejudice, we don't look to the actual arguments made. We look to whether, in some ultimate sense, it was prejudicial. Correct, Your Honor. The court looks at reasonable probability, and to a certain extent there's a natural element of speculation to decide what would have been reasonably likely, what would have happened but for an alleged error. That's what this court does, and that's what it did in almost any case where this is being evaluated. How do we assess reasonable probability when an argument hasn't been made? Do we say, but it could have been made, but it should have been made, but it was there, or do we say, well, it wasn't made, so it wasn't a reasonable probability? Which do we look at? I think this court in U.S. v. Daly does what the defense is alleging would be improper. It said in determining whether there was reasonable probability of relief, a district court could and did consider Daly's entire criminal record as it existed at the relevant time. In other words, while you can't look beyond the removal order, it is evident, it's obvious, it's likely that you would have looked at the other CIMTs that existed at the time. In fact, you know it's especially true here because the INS predecessor to ICE did just that in this case, but with an aggravated felony. They added an allegation. And the immigration counsel, and I'm going to try and actually combine, answer both questions at the same time, the counsel in this case actually fought on that, litigated against it being an aggravated felony, I presume because he understood that for Section 212C relief that was going to be a major factor, a major consideration. And again, to distinguish this from CERNA, CERNA, Scott, Copeland, all those cases, all the cases where this court said a defendant met, or excuse me, a counsel met the Fifth Amendment ineffective assistance of counsel standard, it was typically where, or almost always where I think, an immigration judge or counsel said there is an avenue for relief, there is this argument, there is this essentially avenue that you should take or you can take, and they simply don't. And they really don't do anything else. Like in CERNA, I believe he appears at one appearance, he says he's going to do something, he just never does it. This is a case where, and we don't concede, by the way, that there was, that the wall was settled or that it's clear, but putting that aside because I recognize that it's a much more complicated question, saying here that you're ineffective if you don't make an argument that we decide is incorrect almost would conflate all three prongs, right? Because you would be saying that there's a fundamental defect, there was something unfair about the proceedings, and even though you didn't move to reopen, you didn't move to reconsider, you didn't appeal, you didn't say to the immigration judge, actually we never did concede that issue, again, it is unclear here whether the immigration judge just never addressed that brief or they at some point withdrew, we just don't know. But what we do know is the counsel argued for nine years and litigated issue after issue and appeared at numerous immigration proceedings where he argued vigorously for his client, and that's just not Cerna, it's not Copeland, and it's basically saying as long as you think they're wrong. Our cases don't decide that there wasn't ineffective assistance of counsel because counsel made many, many arguments if counsel failed to make a determinative argument that he knew and should have made and that would have made a difference. So the fact that you're telling us that counsel spent a lot of time and got a lot of money presumably making all sorts of arguments doesn't really move me. My question keeps coming back to the fact he didn't make an argument that on its face was valid, and then did it make any difference in this case given the fact that there were other reasons this guy would have been deported? Right. I think one reason he might not have made, or let's say he did make the argument, and this is what's sort of unusual here, that certainly distinguishes it from other ineffective assistance cases. We're not saying he didn't spot an issue. We're saying somewhere along the line it was decided to not press that issue. And one reason might be, to connect both points, one reason might be he knew that there was, and again this is requiring a degree of speculation, and again it's the defendant's burden, but he knew that they could have just replaced it with another CIMT. He was focused on 212C relief, and the defendant continued to commit crimes and gather convictions. So you are now saying that even if the government should have and didn't raise it, we can't say that counsel was ineffective because it is at least plausible to say that counsel didn't raise it because counsel knew it wouldn't make any difference. Among other possible reasons, yes, Your Honor. I don't think it's clear in this case that counsel made any decision that was incorrect. And I'm happy to get into the merits, although I understand that's sort of the more difficult categorical approach. But we're looking back also at 1995, between 1995-2000, and even if this Court decided today that, you know, under all the precedent that we built up as for the categorical approach and the modified categorical approach and what you could look at and what you can't look at, that this answer was settled and clear back at this time, I don't think that that's fair, and I don't think that's correct. I think what we know from the record certainly is the attorney did a lot and was not phoning it in, was clearly present, was clearly making arguments, was clearly spotting issues. And for a reason we don't know, he did not press one argument, but he pressed a lot of other arguments. And to say that per se you're ineffective when not only you would have to come up with sort of a rule that says you are ineffective when even if you spot an issue for reasons we're not sure of, you decide to press other issues. Thank you, Your Honor. I would point to a couple of district court decisions that are talking about this idea of, well, you made other arguments. The District of Vermont in Klim and also Judge Irizarry's decision in Mesa, we have lawyers who didn't just walk away from their clients. We have lawyers who made mistakes. Okay. But what about the point that counsel didn't make an argument which he, she, they knew or should have known would not have made any difference because there were other CIMTs? What about just that narrow argument that not making an argument when that argument would not have worked or when a counsel would assume it wouldn't work because there were other CIMTs is not inefficient? I don't think it goes along with what the cases have said. Because what the cases are talking about, even when you have clients who are eligible, for example, for 2212C waivers and you're maybe pinning your hopes on that, that it doesn't excuse giving up an argument that on its face, looking at the order that the INS brought, looking at the proceedings as they went forward, would have won. I mean, it's sort of like saying, in my view, it's okay to give up a valid challenge to the indictment because you're hoping sentencing will go great. Once your client is deportable, he's deportable, and your waiver is a discretionary relief, you don't know what's going to happen. It is very hard to imagine why it would be okay for a lawyer to give up an argument, which I think, frankly, clearly would have won based on longstanding Second Circuit law and longstanding New York law. Thank you so very much. Thank you, Your Honor. This was very well-argued. Definitely got a lot of extra time to be able to answer our questions. We appreciate it.